BANKERS TRUST CO. *v.* FOTO.

1. MARRIAGE—CEREMONIAL MARRIAGE—PRESUMPTION OF VALIDITY. The presumption of the validity of a ceremonial marriage is one of the strongest known to the law.

2. SAME—INVALIDITY OF CEREMONIAL MARRIAGE—EVIDENCE—BURDEN OF PROOF.
Clear and convincing evidence is required to overcome the presumption of validity of a ceremonial marriage, the burden of proof of showing invalidity being upon the party asserting same.

3. PROCESS—AFFIDAVIT FOR SUBSTITUTED SERVICE—DISCRETION OF
COURT.

It is the duty of a circuit judge to determine whether there is
sufficient in an affidavit for substituted service to conform
with statute pertaining thereto (3 Comp. Laws 1929, § 14109).

4. SAME—AFFIDAVIT FOR SUBSTITUTED SERVICE—ORDER FOR APPEAR-
ANCE—STATUTES.

If contents of affidavit of publication of service state require-
ments of statute and officer finds enough in it to satisfy his
judgment that the conditions for substituted service exist, he
has jurisdiction to make order for appearance (3 Comp. Laws
1929, § 14109).

5. JUDGMENT—COLLATERAL ATTACK—AFFIDAVIT FOR SUBSTITUTED
SERVICE.

Finding of trial judge in divorce case that affidavit for substi-
tuted service, stating that defendant husband's last known
address was at a certain street address in a Canadian city,
was sufficient to give him jurisdiction is not disturbed on
collateral attack in suit to set aside conveyances of property
by man who claimed plaintiff had not been legally divorced
(3 Comp. Laws 1929, § 14109).

6. SAME—COLLATERAL ATTACK—BURDEN OF PROOF.

Party collaterally attacking a decree entered in divorce suit on
ground that wife, plaintiff therein, had perjured herself in
claiming a two-year residence in this State before filing her
bill and that such period of residence was required by statute
to give the court jurisdiction thereof has burden of proof
of showing length of time plaintiff had resided in the State
(3 Comp. Laws 1929, § 12731).

7. SAME—COLLATERAL ATTACK—DIVORCE DECREE—RESIDENCE RE-
QUIREMENTS.

On collateral attack of divorce decree in suit wherein bill al-
leged residence of plaintiff in this State for two years prior
to filing bill where statute then required but one year's resi-
dence if the cause for divorce arose within the State, a show-
ing of only one year's residence would support decree though
a residence of two years had been alleged in the bill (3 Comp.
Laws 1929, § 12731).

8. DIVORCE—EXTREME CRUELTY—DESERTION—CONDONATION A QUES-
TION OF FACT.

Whether or not living with husband for a brief period after
cause for divorce on ground of extreme cruelty and desertion
had arisen constituted a condonation by wife of the cruelty

and desertion charged in bill subsequently filed was a question of fact in no way affecting jurisdiction of the court to grant a divorce to one who had lived within this State for time required by statute where cause for divorce arose in this State and who had complied with statutory requirements as to service by publication (3 Comp. Laws 1929, §§ 12731, 14109).

9. JUDGMENT—COLLATERAL ATTACK—DIVORCE DECREE—RESIDENCE.
   On collateral attack of divorce decree which had been granted plaintiff wife who had alleged a residence of two years, decree was properly sustained in instant suit where it was shown she had regarded and intended that her home be in this State, it clearly appeared it had been her home for at least one year previous to filing of bill, the cause for divorce arose within this State, and statute then required but one year's residence in the State under such circumstances (3 Comp. Laws 1929, § 12731).

10. COURTS—DECISIONS TO BE MADE WITHIN 60 DAYS—STATUTES.
    Statutory provision that, in trial by court without a jury in action at law or chancery, decision shall be given within 60 days from time issue was submitted to the court is directory, not mandatory, and does not preclude court from taking further proofs after expiration of 60 days (3 Comp. Laws 1929, § 14264; Court Rule No. 32 [1933]).

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 8, 1942. (Docket No. 16, Calendar No. 41,910.) Decided May 18, 1942.

Bill by Frank G. Smith against Anna Mary Foto to set aside conveyances of property. Bankers Trust Company, administrator with will annexed of estate of Frank G. Smith, deceased, substituted for Frank G. Smith. Bill dismissed. Plaintiff appeals. Affirmed.

*Edward Bryant* (*Henry K. Gibson,* of counsel), for plaintiff.

*Edward N. Barnard,* for defendant.

BUTZEL, J. Bankers Trust Company, Detroit, Michigan, administrator with the will annexed of the estate of Frank G. Smith, deceased, has been

substituted as plaintiff in this case originally brought by Frank G. Smith in his lifetime against Anna Mary Foto. Many of the pertinent facts in the case are set forth in *Smith* v. *Foto*, 285 Mich. 361 (120 A. L. R. 801), in which we reversed the order of dismissal before a hearing. Two opinions were filed in the case, four Justices in the short opinion concurring in the result, so that all that was decided was that the bill contained allegations conferring jurisdiction and commanding the taking of proofs. Proofs have now been taken and the trial judge has entered a decree dismissing the bill upon the merits. The trust company appeals.

The purpose of the bill is to recover property given to defendant during the marriage and also by way of settlement at the time of divorce in Florida on May 21, 1936. Smith filed this bill solely on the claim that he had never been legally married to defendant because, as he alleged, she had never been legally divorced from Frank Foto, her former husband; that, therefore, her marriage to Smith was a nullity; and that during the four years, approximately, that they lived together, they were not legally married. No other fraud is claimed. Smith, an elderly man, had been twice previously married, had also had relations with other women, had met defendant at a "sporting house," had thereafter paid her expenses in a private home for a considerable period and then married her at Bowling Green, Ohio. He lived with her four years and, after she secured a divorce from him, he again remarried.

Smith was not a party to the defendant's divorce suit from Frank Foto, her former husband. She had married Foto on May 12, 1928, in Kansas, and secured a *pro confesso* divorce decree on the grounds of desertion and cruelty in the circuit court for the county of Wayne, State of Michigan, on May 1, 1931. She married Smith on June 28, 1932. Plaintiff by a

collateral attack on this decree seeks in the instant suit to set aside deeds and recover personal property given by Smith to defendant.

The presumption of the validity of a ceremonial marriage such as that between Smith and defendant in 1932 is one of the strongest known to the law. Clear and convincing evidence is required to overcome it and the burden of proof is imposed upon the plaintiff to show that decedent was entitled to the relief sought. Plaintiff attacks the Foto divorce on two grounds: (1) that the affidavit of nonresidence was fatally defective; (2) the defendant perjured herself when she claimed the two-year term of residence before filing her bill, and that such period of residence was required by statute in her divorce suit to give the court jurisdiction thereof.

(1) The affidavit for substituted service in the divorce case stated that "the defendant's last known address was 524½ Sargent avenue, Winnipeg, Manitoba, Canada." We need not go outside of the State for authority and, therefore, refrain from discussing and distinguishing the cases from other jurisdictions cited by plaintiff. The affidavit for publication was carelessly drawn and the question is raised whether it conforms with the provisions of the statute. 3 Comp. Laws 1929, § 14109 (Stat. Ann. § 27.776). It is advisable that trial judges insist on a more rigid observance of the statute so as to avoid litigation of the kind that now confronts us. However, in the last analysis, it is the duty of the circuit judge to determine whether there is sufficient in the affidavit to conform with the statute. The law is set forth in *Pettiford* v. *Zoellner*, 45 Mich. 358, 362, where we said:

"It is contended that this affidavit presents no facts which could give the officer jurisdiction to make the order, the deponent merely testifying to infor-

mation and belief and not even giving the sources of his information. That this affidavit is not what it ought to have been may be fully admitted; but when it is claimed that the order of publication and the subsequent decree of the court are void for this reason, the court may well hesitate before acceding to a construction so far reaching and so destructive.''

Also, see *Kretzschmar* v. *Rosasco*, 250 Mich. 9, where we also said:

''If the contents of the affidavit state the statutory requirements and the officer finds enough in it to satisfy his judgment that the conditions for substituted service exist, he has jurisdiction to make the order.''

On a collateral attack under the facts in this case, we will abide by the decision of the trial judge in the original case.

(2) As to the second ground of attack in regard to the length of time defendant resided in Michigan prior to the filing of her bill of divorce (January 23, 1931), again the burden of proof is on plaintiff in a collateral attack upon the decree. According to the testimony, defendant was married when very young to Foto, whom she believed to be a salesman but who turned out to be a Capone gangster. She claims that they lived in Detroit until he deserted her there on October 15, 1928, after beating her, that some months later he returned to Detroit and forced her to live with him for a short period, until she succeeded in getting away from him, after which she returned to Detroit, which she considered and intended to be her home. Defendant testified that she was in mortal dread of her husband and his associate gangsters, and that she went so far as to seek the protection of a detective who had been hired by a committee of prominent citizens of Chicago to put an end to the existing outlawry. The detective

testified to this effect at the hearing of the instant case. It was shown that during the first year of the two-year period prior to the time that defendant filed her bill against Foto, she had been in various other places outside of the State but only for short intervals. She testified that she came back to Detroit, which she regarded as her home. For a number of weeks, she lived at Rockford, Illinois, with a certain man as if she were married to him. Another time she worked for a short period at a Child's restaurant in New York. She claimed that she was obliged to assume various aliases and keep her identity unknown because, after she had exposed her husband and his gangster associates, whom she knew to be "killers," and the newspapers had publicized such exposure, she was in mortal fear of them. In the Michigan divorce case, she further testified that she was employed by a certain tailor in Detroit at the time of the hearing, but the tailor testified in the instant case that he never employed her or anyone else. She explained this discrepancy by stating that a friend had told her that she had secured such position for her, but that she had never taken it. She was also a seamstress. The judge stated that he was satisfied with the explanation. Plaintiff in effect invokes the principle "*falsus in uno, falsus in omnibus.*" While we are not overly impressed with the truth of all of her statements, it appears that in the Michigan divorce suit she testified to acts of cruelty committed in Michigan, and another witness testified that she was present when Foto struck plaintiff. Assuming that she did not reside in Michigan for two years, there is not an iota of testimony which would disprove her claim that Foto was guilty of cruelty to her in Detroit, Michigan, at least a year prior to the filing of the bill of divorce, and

there is no testimony whatsoever to disprove her statement that she did reside here for that year, although the testimony does show that she was out of town for short intervals during the year prior to the year preceding the filing of her bill. Under the law then in effect, one year's residence by plaintiff was sufficient to confer jurisdiction if the cause of action for divorce arose in this State, while two years' residence was required if such cause arose beyond the State (3 Comp. Laws 1929, § 12731), subsequently changed in this regard by Act No. 2, Pub. Acts 1941 [Comp. Laws Supp. 1942, § 12731, Stat. Ann. 1941 Cum. Supp. § 25.89]). Here the acts of cruelty and desertion occurred in Michigan; hence, on collateral attack, a showing of only one year's residence will support the decree, though a residence of two years was alleged in the bill for divorce. Defendant testified that she was forced to live with Foto for a very short period in April or May, 1929, but left him when she recovered from an illness and has never seen him again. While it might be claimed that this interlude, if not against defendant's will, would have terminated the continuity of the two-year period of desertion, or constituted condonation of the cruelty and desertion charged, this claim presents only a question of fact, which in no way affects the jurisdiction of the court in granting a divorce to one who had lived continuously in this State for a period of one year prior to filing the bill, whose cause of divorce arose in this State, and who had complied with the statutory requirements as to service by publication.

Her main residence was in Detroit, and she regarded it and intended it to be her home. This being a collateral attack, we believe the trial judge

was correct in holding that the divorce was properly granted.

Objection was further made to the fact that the hearing in the case at bar took place in the month of May, 1940, but the case was not disposed of by the trial judge at the time, he asking for briefs. Proofs were closed at that time. In June, 1941, however, the court asked that defendant be called to the witness stand so that he might get more light on the subject. Defendant explained her failure to appear at the earlier hearing because she feared for her safety after the publication of her pictures in the papers and the notoriety that followed. While the court should have decided the case within 60 days from the time proofs were closed in accordance with 3 Comp. Laws 1929, § 14264 (Stat. Ann. § 27.993), he was not foreclosed from taking further proofs, the statute being directory and not mandatory. *Stepanian* v. *Moskovitz*, 232 Mich. 630; also Court Rule No. 32 (1933).

A very careful reading of the record and a consideration of all the circumstances leads us to the conclusion that the trial judge arrived at the correct result, and his decree is affirmed, with costs to defendant.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.