CONRAD *v.* WARD

OPINION OF THE COURT

1. PROCESS—SUBSTITUTED SERVICE—NONCOMPLIANCE.

Quashing service of process for noncompliance with a court order authorizing substituted service was proper where the order required plaintiffs to post the summons and complaint on the front doors of certain specified buildings and to effect personal service upon a member of the defendant's family and where the papers were tacked to the doors of the specified buildings, but a member of defendant's family was not served (GCR 1963, 105.8).

2. PROCESS—SUBSTITUTED SERVICE—SUBSTANTIAL DEFECT.

Failure to have a defendant personally served or served in the substituted method authorized by the court order constitutes a substantial defect in service (GCR 1963, 105.8).

DISSENT BY LEVIN, J.

3. PROCESS—SUBSTITUTED SERVICE—DEFECTIVE SERVICE—AVOIDANCE OF SERVICE—EVIDENTIARY HEARING.

*Evidence that the defendant had been avoiding service of process, although no formal finding so holding had been made, justified remanding for an evidentiary hearing as to whether defendant had notice of the pendency of the action before the statute of limitations expired where plaintiff had not served defendant in strict compliance with a special court order, and the trial judge, although acknowledging the plaintiff's good faith efforts to serve defendant, quashed the service and dismissed plaintiff's action as barred by the statute of limitations; if it found that the defendant had notice of the action, the defective service is curable by amendment (GCR 1693, 13, 102.3, 105.8).*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 8]  42 Am Jur, Process §§ 57–66.
[3–7, 9]  42 Am Jur, Process §§ 4, 72.

4. PROCESS—AVOIDANCE OF SERVICE—KNOWLEDGE OF ACTION.

*A defendant who successfully avoids service of process should not be permitted to avail himself of any defect or failure in service of process where the action was commenced in the statutorily-prescribed period; if the defendant had notice of the pending action against him, he should not be heard to complain because he successfully avoided plaintiffs' process server.*

5. PROCESS—SERVICE—LIMITATIONAL PERIOD—COMPLIANCE.

*The purpose of requiring commencement of an action and service of process within the statutorily-prescribed limitational period is satisfied when (1) a plaintiff commences his action within that period and (2) the defendant learns of the commencement of the action within the statutory period, regardless of how he obtains his notice, whether through formal service or otherwise, if either the plaintiff has substantially complied within the statutory period with the requirement that service be effected or the defendant has attempted to avoid service.*

6. PROCESS—DEFECTIVE PROCESS—AVOIDANCE OF SERVICE—KNOWLEDGE OF ACTION—SUBSTANTIAL COMPLIANCE.

*Commencement of negligence action within the statutorily-prescribed period and defendants' receipt of notice of that action within the statutory period rendered a failure to comply in all aspects with a court-ordered method of substituted service invalidating only in the sense that no judgment could be entered against the defendant until the defect was cured where there was substantial compliance with the requirement that service be effected before the expiration of the statutorily-prescribed period and where defendant actively and successfully avoided service of process.*

7. PROCESS—SERVICE OF PROCESS—PLAINTIFF'S DUTY.

*A plaintiff is required to prosecute his action with due diligence and to either substantially comply with the requirement that formal service be effected or, alternatively, to show that he was prevented from complying because of defendant's evasive tactics.*

8. PROCESS—SUBSTITUTED SERVICE—SUBSTANTIAL COMPLIANCE.

*A court order authorizing substituted service of process by plaintiff's tacking the summons and complaint to the buildings at two specified addresses and leaving a summons and complaint at defendant's usual abode with a member of defendant's family who resides there and was of suitable age was sub-*

*stantially complied with where plaintiff's process server went to the addresses, posted the summonses and complaints, knocked on the doors and rang the doorbells, but no one answered, because plaintiff did all that he could do (GCR 1963, 105.8).*

9. PROCESS—DEFENDANT'S RIGHT—NOTICE OF ACTION—AVOIDANCE OF SERVICE.

*The right to receive notice of the commencement of an action within the statutory limitational period is a defendant's only substantial right concerning service; a defendant who avoids service of process is not prejudiced by the failure to receive in hand the summons and complaint which he successfully avoided.*

Appeal from Wayne, Blair Moody, Jr., J. Submitted Division 1 February 2, 1971, at Detroit. (Docket No. 7056.) Decided May 21, 1971.

Complaint by Paul M. Conrad and Marguerite E. Conrad against Clarence G. Ward and Violet D. Ward for damages arising out of an automobile accident. Substituted service of process quashed. Summary judgment for defendants. Plaintiffs appeal. Affirmed.

*John F. Kane,* for plaintiffs.

*Martin, Bohall, Joselyn, Halsey & Rowe,* for defendants.

Before: LESINSKI, C. J., and R. B. BURNS and LEVIN, JJ.

R. B. BURNS, J. After several unsuccessful attempts to locate defendant Clarence G. Ward in order to serve him with the complaint and summons, plaintiffs were granted a court order pursuant to GCR 1963, 105.8.[1] The court order author-

_____
[1] "The court in which an action has been commenced may, in its discretion, allow service of process to be made upon a defendant

ized substituted service of process by tacking the summons and complaint to the front doors of certain specified buildings, "and, by leaving a summons and a copy of the complaint and this order at defendant's usual place of abode with some member of his family therein residing, who is of suitable age and discretion, informing that person of the nature of the process served". Although the papers were tacked to the doors of the buildings specified in the court order, they were not personally served upon any member of defendant's family. Noncompliance with the court order resulted in an order quashing service of process. Subsequently a summary judgment was entered since the statute of limitations had run on plaintiffs' claim.[2]

Plaintiffs argue that their "substantial compliance" with the court order authorizing substituted service of process was legally sufficient.

The court rule herein under consideration is relatively new, and was designed to give flexibility to the system by providing a means of service, to be determined by the court, upon any defendant subject to the jurisdiction of the courts of this state. See 1 Honigman & Hawkins, Mich Court Rules Annotated (2d ed), pp 112, 113.

The trial judge was correct in his refusal to recognize a form of service that complied with only one-half of his order. It should be noted that the trial judge altered plaintiffs' request from "or, in the alternative", to read "and", in order to require both a conspicuous posting of papers "and" service

in any other manner which is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard, if an order permitting such service is entered before service of process is made upon showing to the court that service of process cannot reasonably be made in the manner provided for under other rules."

[2] MCLA § 600.5805(7) (Stat Ann 1962 Rev § 27A.5805[7]); MCLA § 600.5856(3) (Stat Ann 1962 Rev § 27A.5856[3]).

upon some member of the family. Plaintiffs' failure to comply with the court's order which was fair and reasonable under the circumstances precludes their requested relief. See *Meier* v. *Meier* (1961), 362 Mich 653.

In *Barber* v. *Tuohy* (1971), 33 Mich App 169, the plaintiff filed an action against a nonresident motorist. The Secretary of State was served with a summons and a copy of the complaint. A copy of the complaint was mailed to the defendants and received by them. Barber failed to include in the envelope addressed to the defendants the notice that the Secretary of State had been served as required by the act. This failure was a technical defect that the Court held could be cured by amendment.

In the present case we do not have a technical defect but a substantial defect in that the defendant was not served either in person or by the method authorized by the judge.

Affirmed. Costs to defendants.

LESINSKI, C. J., concurred.

LEVIN, J. (*dissenting*). The plaintiffs commenced this action on September 9, 1968. That tolled the running of the statutes of limitations for 90 days. The last day on which service could be made on the defendants was December 16, 1968.

Affidavits were filed by the plaintiffs in opposition to the defendants' motion for summary judgment:

(a) Plaintiffs' attorney swore that on September 9, 1968, he retained Gerald Penfil to attempt to effectuate service on the defendants. Penfil reported to plaintiffs' attorney that Rex Harmon telephoned him and represented that he was defendant Clarence Ward's attorney and said that

Ward would communicate with Penfil as to where and when service of process could be made, but Penfil had not heard from Ward. Penfil's subsequent efforts to reach Harmon were unavailing until November when Harmon reported that, while he had handled matters for Ward in the past, he had no knowledge of his present whereabouts.

(b) A deputy sheriff stated that on September 17 and 18 he attempted to serve the defendants at their residence, 13939 Steel Avenue, Detroit, Michigan, but no one responded when he rang the doorbell and he knocked on the front door. On December 12, 1968, he again visited the residence and was advised by a man, who said he was Clarence Ward's son, that his father was no longer living at that address. On December 13, 1968, he learned that Ward had retired and had moved from the Steel Avenue address to 18733 Pinecrest Drive, Allen Park, Michigan.

(c) Gerald Penfil stated that he is a professional process server and had been retained by plaintiffs' attorney to effectuate service. He made four attempts to serve the defendants at the Steel Avenue address. On the fourth occasion a man who said he was Ward's son answered the door, refused to disclose where his father lived, and offered to take the papers himself. The son said he would communicate with his father and would have him call the process server. It was the following day that he heard from Rex Harmon, who said that he was Clarence Ward's attorney. Harmon said he would advise Ward to accept service and he would have Ward communicate with Penfil. Penfil later learned that Ward had remarried and, on or subsequent to December 9 or 10, that he was living at the Pinecrest address.

(d) Another deputy sheriff stated that on December 10, 1968, he attempted to serve a copy of the summons and complaint at the Pinecrest address at 12:20 p.m. and 3:50 p.m. but no one answered the doorbell or his knocking at the front door. He returned at 6:05 p.m. A woman answered and said that Clarence Ward was not at that address and that she did not know where he was presently located.

(e) Still another deputy sheriff stated that on December 16, pursuant to Judge Moody's order authorizing substitute service under GCR 1963 105.8, he visited the Steel Avenue and the Pinecrest Drive residences, rang the front doorbells and, receiving no response, knocked on the doors and tacked a true copy of the court's order, together with the summons and complaint, in a prominent place on the front door of each residence.

In his opinion quashing the service of process and dismissing plaintiffs' action as barred by the statute of limitations, the trial judge said:

"Unfortunately, harsh results are sometimes unavoidable. This court recognizes the good-faith efforts of the plaintiffs' counsel and agents to vigorously obtain service of process as well as the dilatory and evasive efforts of the defendant. However, when alternative methods of service are requested under this rule it is the opinion of this court such alternative methods must be strictly construed and complied with."

Whether service is made in accordance with the requirements of the statute or pursuant to a special order of the court it must, indeed, be made in the manner required. Service in this case was not in strict conformity with the requirements of the judge's order and, thus, was defective. It does not,

however, follow as a necessary consequence that the plaintiffs' action must fail.

While the trial judge made no formal finding that Clarence Ward was avoiding service, he indicated his impression, which I share, that Ward was avoiding service. In my opinion, this case should be remanded for an evidentiary determination as to whether Ward did have notice of the pendency of the action before the statute of limitation expired. If he did, then the defective service is curable by amendment.

The purpose of statutes of limitations is to protect defendants from stale claims. To that end, the law requires both that an action be commenced and that the defendant be served within the statutory period. This action was commenced within the statutory period. If the defendant was not served because he was avoiding service, then there is no sound reason why he should be permitted to avail himself of the defect or any failure in service of process. If he had notice of the pendency of the action, he should not be heard to complain because he was successful in avoiding plaintiffs' process servers.

Recently, in *Barber* v. *Tuohy* (1971), 33 Mich App 169, *leave to appeal denied* 385 Mich 764, we permitted a plaintiff to amend a defective service. Barber had commenced an action against a nonresident motorist. A summons and a copy of the complaint were served on the Secretary of State and mailed to the defendants and received by them. Barber failed, however, to include in the envelope addressed to the defendants the notice required by the act that the Secretary of State had been served. We held that that defect was curable by amendment under GCR 1963, 13 and 102.3, which read as follows:

Rule 13. "These rules are to be construed to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequences of any error or defect in the proceedings which does not affect the substantial rights of the parties."

Rule 102.3. "At any time and upon such terms as it deems just, the court may in its discretion allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

We said:

"The defect is a technical one. The defendants had notice of the pendency of suit before the expiration of the statute of limitations. There was substantial compliance within the statutory period with the requirements concerning both the form and manner of service of process.

\*          \*          \*

"This is not a case of a plaintiff abandoning prosecution of his lawsuit when the defect was called to his attention. Continuity of prosecution of this action has been maintained with ample vigor.

\*          \*          \*

"The only substantial right of the defendants that is involved is the right to receive notice of the commencement of suit within the statutory limitational period; this the defendants received and they were not at all prejudiced by non-delivery of notice that the Secretary of State had also been served."

The purpose of requiring both commencement of an action and service of process upon a defendant within the statutorily-prescribed limitational periods should be deemed satisfied when (1) the plaintiff commences an action *and* (2) the defendant learns of the commencement of the action within the statutory period, howsoever he obtains such notice,

whether through formal service or otherwise, *if either* the plaintiff has substantially complied within the statutory period with the requirement that service be effected *or* the defendant has attempted to avoid service.

In this case the action was duly and timely commenced. While the defective service might have been invalidating, in the sense that no judgment could be entered against Ward unless and until the defect was cured, it appears that within the statutory limitational period the defendants received notice of the pendency of this action and there was *both* substantial compliance with the requirement that service be effected before the expiration of the statutory limitational period and that the defendant was avoiding service.

Of course, it would not be sufficient merely to commence an action. A defendant is entitled to notice of the commencement of the action. Nor would it be enough if the defendant just happened casually to learn of the commencement of the action. A plaintiff is obliged to prosecute his action with due diligence and either substantially to comply with the requirement that formal service be effected or, alternatively, to show that he was prevented from complying by the defendant's evasive tactics.

If the defendant Ward was, indeed, avoiding service, then his affirmative actions to avoid service are not significantly different from actions taken by defendants in other cases who were held estopped from raising the bar of the statutes of limitations.[1]

---

[1] See *Albert* v. *Patterson* (1912), 172 Mich 635, 642 (defendant's attorney obtained an *ex parte* stay of proceedings which prevented the plaintiff from executing her deficiency decree on a land contract before the statute of limitation had expired); *Renackowsky* v. *Board of Water Commissioners of Detroit* (1900), 122 Mich 613 (defendant's conduct led the plaintiff to believe that a suit to enforce his rights was unnecessary). Similarly, see *Stauffer* v.

After the court's order was entered on December 16, 1968, the plaintiffs' process server did all he could have been expected to do. He went to the two addresses specified in the order, rang the doorbells, knocked on the doors, and posted copies of the court's order and of the summons and complaint at each address. No doubt, if someone had answered the door he would have complied with the additional requirement imposed in the court's order that copies be left at defendants' usual place of abode "with some member of his family therein residing who is of suitable age and discretion, informing that person of the nature of the process served". But no one of suitable age and discretion responded on December 16, 1968. Having done all that he could do, plaintiffs' process server and, hence, the plaintiffs, substantially complied with the court's order.

Paraphrasing *Barber* v. *Tuohy,* the only substantial right of the defendants that is involved is the right to receive notice of the commencement of the action within the statutory limitational period. If Ward was avoiding service, then he received the requisite notice within the statutory period and he

---

*The Isaly Dairy Company of Pittsburgh* (1965), 4 Ohio App 2d 15, 26 (211 NE2d 72, 80); *Clark* v. *Augustine* (1902), 62 NJ Eq 689 (51 A 68); Dawson, Estoppel and Statutes of Limitation, 34 Mich L Rev 1 (1935).

Concededly, this case differs from the cases above cited in that the plaintiffs here did not refrain from action because of defendants' conduct. Plaintiffs, here, attempted to act but were unable to act effectively because of Clarence Ward's conduct. The difference is not important. In this case, as in the cited cases, the defendant forestalled plaintiffs by his conduct.

If a statute of limitation expires because a plaintiff neglects to protect his rights then he has only himself to blame. "The purpose of [statutes of limitations] is to deny a remedy to a party who has been *unreasonably negligent* in asserting his rights." (Emphasis supplied.) *Buzzn* v. *Muncey Cartage Co.* (1929), 248 Mich 64, 67. However, if a plaintiff's failure to act or inability to act effectively is attributable to the defendant's conduct, then the defendant should not be allowed to raise the bar of the statutes of limitations.

was not at all prejudiced by the failure to receive in hand the summons and complaint which he successfully avoided.

The order of December 16, 1968, authorizing substitute service under GCR 1963, 105.8, was entered before the substitute service was effected.[2] There is no need to amend the court's order. The defective substitute service pursuant to the court's order was no less amendable than the defective service pursuant to the statute in *Barber* v. *Tuohy.*

In the words of Rule 102.3, it does not "clearly appear that material prejudice would result to the substantial rights of the party against whom the process issued" to enter an order permitting the plaintiff now to serve the defendant Clarence Ward personally.

As set forth in *Barber* v. *Tuohy,* amendments of process under Rule 102.3 relate back; if an amendment were allowed, the action would not be barred by expiration of the statute of limitation between the time of service and the time of amendment.

I would, accordingly, remand for an evidentiary determination of whether Clarence Ward had notice of the pendency of the action within the statutory limitational period and, if it is found that he did, for the entry of an order authorizing the plaintiffs to amend their defective service by promptly serving Clarence Ward personally.

---

[2] "The court in which an action has been commenced may, in its discretion, allow service of process to be made upon a defendant in any other manner which is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard, if an order permitting such service is entered before service of process is made upon showing to the court that service of process cannot reasonably be made in the manner provided for under other rules." GRC 1963, 105.8.